### THE HESPERUS.

### THE SEABOARD NO. 13.

### SEABOARD SAND & GRAVEL CORPORATION v. GOWANUS TOWING CO., Inc., et al.

### No. 16416.

District Court, E. D. New York.

Aug. 5, 1942.

730

Bigham, Englar, Jones & Houston, of New York City (Charles A. Van Hagen, of New York City, of counsel), for libellant.

Alexander & Ash, of New York City (Joseph M. Meehan, of New York City, of counsel), for claimant-respondent tug Hesperus and Gowanus Towing Co., Inc.

William C. Chanler, Corp. Counsel, of New York City (George S. Franklin, Asst. Corp. Counsel, of New York City, of counsel), for respondent City of New York.

CAMPBELL, District Judge.

On August 29th, 1941, at about 7.30 o'clock A. M., the libellant's scow "Seaboard No. 13", fully loaded with gravel, about 110 feet long, 34 feet beam, and drawing about 9 feet 6 inches, was taken in tow, at the foot of Smith Street, Brooklyn, by the Tug "Hesperus", owned and operated by the Gowanus Towing Co., Inc., astern on two short hawsers about 20 to 25 feet in length, bound for the plant of the Colonial Sand & Stone Company, at Sackett Street, Gowanus Canal.

At that time the tide was still falling, and the "Hesperus", with her tow, proceeded up the Canal, against the tide, until she arrived a little below the Carroll Street Bridge, when the tide changed to flood.

The "Hesperus" signaled the Carroll Street Bridge, maintained by the respondent City of New York, to open at 8.43 o'clock A. M., and it opened at 8.45 A. M.

The bridge was a retractible bridge, that is, the draw did not rise, but slid back, on the roadway, from one side of the creek to the other. The draw was but 26 feet wide, and the scow "No. 13" being 24 feet wide, there was but 1 foot clearance on either side, if she was taken straight through the draw, and that clearance was not decreased at the bottom. The sides of the bulkhead, or abutment, on each side were perpendicular, and did not slant in toward the center of the Canal.

The "Hesperus" proceeded through the draw, clear of the bridge, and had brought her tow halfway through the bridge, so that her forward bulkhead was clear of the bridge, and her after bulkhead had not reached the bridge, thus bringing the draw, when pulled across, over the cargo, when the "No. 13" grounded. There is a conflict of opinion as to whether the "No. 13" grounded, or was jammed, but it clearly appears to me that she first grounded forward, as one witness said he saw that the mud had been stirred up, and that caused the stern to swing the very short distance possible, and jammed the scow "No. 13" in the draw. On orders of the master of the tug "Hesperus", the Captain of the barge "No. 13" passed, to the deckhand of the "Hesperus", from the port side forward of the "No. 13" a line and he put it over piling on the shore. Whether the line was single or doubled, it was a new line, two-inch running line, and satisfactory to the deckhand of the "Hesperus".

The "No. 13" being stuck in the draw, the bridge remained open, and the street traffic was held up.

Naturally, the operator of the bridge was anxious to close the draw, and accommodate the street traffic, and asked the master of the "Hesperus" what was the matter, and he said "the scow is stuck in the draw". The operator then asked the master of the "Hesperus" how long he would be there, and he replied "about an hour". "Close up the bridge." The operator asked "how such clearance have you got?" and the master of the "Hesperus" said "I got two or three feet". The master of the "Hesperus" was below the bridge,

and could see, and the operator of the bridge accepted his statement.

The bridge operator then closed the bridge with the "No. 13" below it, and sent two of his men to watch the "No. 13".

The "Hesperus" pulled in alongside the bulkhead, clear of the bridge, and made fast.

There is a sharp conflict in the evidence as to what the master of the "Hesperus" said to the bridge operator about closing the bridge, but I am convinced that the master of the "Hesperus" told the bridge operator to close the bridge, and did not tell the bridge operator that it was up to him.

The water continued to rise astern of the "No. 13", and went up the Canal on each side. Inquiry by the bridge operator's men elicited the reply from the Captain of the "No. 13", that the line was slack and that he had enough clearance, when suddenly the "No. 13", by the force of the water astern, cleared the ground, shot forward, her line to the shore parted, and her after bulkhead was bent back and caught under the bridge. An attempt was made to open the draw of the bridge, but that proved to be impossible, as the "No. 13" was caught under the bridge.

No request was made, at any time, between the time the draw closed and the "No. 13" went ahead, and her after bulkhead caught, by the master of the tug, "Hesperus", or any one on his behalf, to the operator of the bridge to open the draw.

When it was found that the draw of the bridge could not open with the "No. 13" caught below, the "Hesperus" first tried to push the "No. 13" back, and permit the opening of the draw, which would have given her a free passage, but that proving unsuccessful, the "Hesperus" pulled the "No. 13" through.

The "No. 13" was damaged.

The attempt to show that the rise in the water was caused by the operation, by the City of New York, of a large pump, at around Butler Street, for clearing refuse from the Canal, was not successful, because that pump was not in operation on the morning of the day in question. It further may be said that, even if operating, it would not have had such an effect on the tide at Carroll Street, about a mile away.

Of course, there can be but one proximate cause of the damage, and it is by reason of that cause that liability must be found.

The libellant is without fault, as the "No. 13" was without motive power, and her movements were controlled by the tug "Hesperus".

The "No. 13" was grounded and jammed in the draw, while in tow of the tug "Hesperus", and that creates a presumption of liability on the part of the tug.

Of course, the City was charged with responsibility for the safe and proper operation of the draw of the bridge, and its opening and closing, but, it had a right to act upon the signal and direction of the master of the tug. It seems to me, that Bouker Contracting Co. v. City of New York, 2 Cir., 121 F.2d 13, cited on behalf of the tug and towing company, is not contrary to that view, as in that case the bridge operator acted upon what he thought was a signal by a deckhand, to close the draw, and not upon any signal by the officer in charge of the navigation of the tug, and at the wheel, whereas, in the case at bar, the master of the tug told the bridge operator to close the draw.

The master of the tug said that he would not be able to bring through his tow for an hour, and yet the damage was done, the "No. 13" pulled through the draw, and the draw opened by 9.35 A. M., only 45 minutes after the draw had been closed.

The damage to the "No. 13" was caused solely by the negligence of the "Hesperus", in grounding and jamming the "No. 13", and contributed by her master directing the closing of the draw, failing to see that a stronger line was put out from the "No. 13" to the shore, and in failing to request the bridge operator to open the draw, as the water rose at the stern of the "No. 13".

The City of New York is without fault. The tug "Hesperus" and the Gowanus Towing Co., Inc., are solely and wholly at fault.

A decree should be entered in accordance with this opinion.